73 P.3d 62

Carmen T. NAKASONE,
Plaintiff–Appellee,

v.

Gerald NAKASONE, Defendant–
Appellant.

No. 23460.

Intermediate Court of Appeals of Hawai'i.

Feb. 27, 2002.

Reconsideration Denied March 18, 2002.

Certiorari Granted April 5, 2002.

Kurt Bosshard, Lihue, on the briefs, for Defendant–Appellant.

Ladye H. Martin, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

Defendant–Appellant Gerald Nakasone (Gerald or Defendant) appeals (1) the January 27, 2000 Order Denying Plaintiff's Request for Attorney's Fees and Granting Defendant's Request for Attorney's Fees in Part and (2) the May 15, 2000 Order Denying Defendant's Motion for Reconsideration of the Order Denying Plaintiff's Request for Attorney's Fees and Granting Defendant's Request for Attorney's Fees in Part. We vacate both orders entered by per diem District Family Judge Max W.F. Graham, Jr., and remand for further proceedings consistent with this opinion.

This case involves the application of Hawai'i Family Court Rules (HFCR) Rule 68 (2000).

## RELEVANT RULE AND STATUTE

HFCR Rule 68 was amended effective January 1, 2000. With the additions bolded and deletions bracketed, HFCR Rule 68 (2000) states as follows:

> At any time more than 20 days before any contested hearing **held pursuant to HRS sections 571–11 to 14 (excluding law violations and criminal matters)** is scheduled to begin, [either] any party may serve upon the adverse party an offer to allow a [decree or order] **judgment** to be entered to the effect specified in the offer. **Such offer may be made as to all or some of the issues, such as custody and visitation.** Such offer shall not be filed with the court, unless it is accepted. If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, [either] **any** party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the court shall treat [the matter as an uncontested proceeding and schedule an appropriate hearing, if necessary] **those issues as uncontested.** An offer not accepted shall be deemed with-

drawn and evidence thereof is not admissible, except in a proceeding to determine costs and attorney's fees. If the [decree or order] **judgment in its entirety** finally obtained by the offeree is patently not more favorable [as a whole] than the offer, the offeree must pay the costs, including reasonable attorney's fees incurred after the making of the offer, unless the court shall specifically determine that such would be inequitable in accordance with the provisions of HRS section 580–47, [as amended. The fact that an offer is made but not accepted does not preclude a subsequent offer] **or other applicable statutes, as amended.**

HFCR Rule 68 (2000) permits offers on any issue (for example, the issue of custody and visitation), but when the offer is not accepted, the question is whether "the judgment in its entirety finally obtained by the offeree is patently not more favorable than the offer[.]" Reasonably construed, the words "the judgment in its entirety finally obtained by the offeree" refer to only the entirety of the part or parts of the judgment resolving the issue or issues as to which there was an offer.[1]

Hawaii Revised Statutes (HRS) § 580–47(a) (Supp.2000) states, in relevant part, as follows:

1. The 1999 version of Hawai'i Family Court Rules (HFCR) Rule 68 used the words "[i]f the decree or order finally obtained by the offeree is patently not more favorable as a whole than the offer[.]" Obviously, the phrase "in its entirety" in the 2000 version was intended to replace the phrase "as a whole" in the 1999 version.

2. The HFCR Rule 68 offer by Defendant–Appellant Gerald Nakasone (Gerald) stated, in relevant part, as follows:

1. [Plaintiff–Appellee Carmen T. Nakasone (Carmen)] would have sole physical custody with the parties sharing legal custody. [Gerald] would pay [Carmen] child support according to the guidelines.
2. CPR [Condominium Property Regime] the Olohena property into three parcels as suggested by Dennis Esaki. The parties would divide equally the CPR costs.
3. Upon completion, the CPR lots and improvements would be valued by an independent appraiser. [Carmen] would have the first option to purchase any or all of the lots at the appraised value. Any lots [Carmen] did not want

Upon granting a divorce, ... the court may make such further orders as shall appear just and equitable ... (4) allocating, as between the parties, the responsibility for the payment of ... the attorney's fees, costs, and expenses incurred by each party by reason of the divorce. In making such further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

## BACKGROUND

The relevant chronological history of this case is as follows:

Gerald and Plaintiff–Appellee Carmen T. Nakasone (Carmen or Plaintiff) were married on August 3, 1974. On September 21, 1984, their first daughter was born (First Daughter). Their second daughter was born on May 2, 1988 (Second Daughter).

On January 14, 1998, Carmen filed a Complaint for Divorce.

On November 24, 1998, Gerald tendered to Carmen an HFCR Rule 68 offer of settlement (Gerald's Offer).[2]

to be awarded would be sold and the value divided equally after payment of the encumbrances thereon. The net value of any lots chosen by [Carmen] would have to be determined and appropriate offsets made to come to an equalization of values.
4. [Gerald] would have the first option to purchase the Crossley Road property at the Nakahara appraised value. Again, the net value would have to be determined and appropriate offsets made.
5. [Carmen] would have the first option of purchasing J & C, Inc. at the hard asset/account receivable/net cash account value. [Gerald] would have the second option to purchase at the same price.
6. Should [Carmen] wish to have the children attend Island School, the children's accounts would be used. All of the children's accounts would remain the children's with both parties['] signatures required for withdrawals. These would be considered to be educational accounts.
7. All life insurance, cash, savings, and retirement accounts would be considered marital property to be divided equally after proper

On December 3, 1998, Carmen responded to Gerald's Offer (Carmen's Response). Carmen's Response disagreed with parts of Gerald's Offer and added clarifications, issues, and conditions.

The family court, on March 2, 1999, approved Carmen's and Gerald's Stipulation as to Certain Issues and thereby resolved some of the issues regarding the division and distribution of property and debts.

Trial was held on March 23, 1999, April 6, 1999, April 9, 1999, and May 7, 1999.

On September 9, 1999, the family court filed its Findings of Fact; Conclusions of Law; Decree Granting Divorce and Awarding Child Custody (September 9, 1999 FsOF, CsOL, and Decree).

Defendant's Motion for Award of Attorney's Fees and Costs was filed on September 17, 1999 (Motion for Award of Attorney's Fees).

Defendant's Motion for Reconsideration and/or Clarification of the Findings of Fact, Conclusions of Law, Decree Granting Divorce and Awarding Child Custody was filed on September 28, 1999 (September 28, 1999 Motion for Reconsideration).

On October 25, 1999, Carmen filed a Motion to Amend Findings of Fact; Conclusions of Law; Decree Granting Divorce and Awarding Child Custody; Exhibit "A" Filed on September 9, 1999 (Motion to Amend).

A hearing was held on November 3, 1999, on (1) the Motion for Award of Attorney's Fees, (2) the September 28, 1999 Motion for Reconsideration, and (3) the Motion to Amend. At the conclusion of the hearing,

the court took the matter under advisement. Before the court made its final decision, HFCR Rule 68 was amended.

The family court, on January 27, 2000, entered its Order Denying Plaintiff's Request for Attorney's Fees and Granting Defendant's Request for Attorney's Fees in Part in which it stated its findings of fact and conclusions of law (January 27, 2000 FsOF, CsOL and Order for Attorney Fees).

Also on January 27, 2000, the family court entered its Order on Plaintiff's Motion to Amend and Defendant's Motion for Reconsideration (January 27, 2000 Order of Amendment) which amended the September 9, 1999 FsOF, CsOL, and Decree.

On February 4, 2000, Gerald filed a Motion for Reconsideration of the Order Denying Plaintiff's Request for Attorney's Fees and Granting Defendant's Request for Attorney's Fees in Part (February 4, 2000 Motion for Reconsideration). The hearing on the motion was held on February 25, 2000. On May 15, 2000, the family court entered its Order Denying the February 4, 2000 Motion for Reconsideration.

On May 23, 2000, Gerald filed a notice of appeal.

Which rule applies? The rule in effect at the time of the original hearing, namely, HFCR Rule 68 (1999), or the rule in effect at the time the original order was entered, namely HFCR Rule 68 (2000)? We conclude that there is no substantive difference between HFCR Rule 68 (1999) and HFCR Rule 68 (2000). Therefore, we will apply HFCR Rule 68 (2000).[3]

adjustments for property received pursuant to paragraphs 2 through 5 above.
8. Through such time as the property division was effectuated and the property(ies) sold, the parties would use their savings to pay the mortgages, taxes and insurance on the properties.
9. [Gerald or Carmen] would purchase the other's interest in the Montana property for $2,500.00 or the property would be sold and the proceeds divided equally.
10. [Carmen] can have all of the personal property and household effects at the marital residence should she accept this proposal.
11. Each party would pay their separate debts. [Carmen] would be responsible for the Bank of Hawaii Visa. The parties would divide equally

the J & C debt up to $10,000.00. The remainder of the J & C debt would be the responsibility of [Carmen].
12. The parties would file a joint tax return for 1998 and divide any refund or liability equally. Through such time as the property division was effectuated and the properties sold, the parties would divide equally any tax deductions arising from the property and mortgages.

3. HFCR Rule 86 (1999) addressed the question of the applicability of amendments. It stated that the amendments

govern[ed] all proceedings in actions brought after they take effect and also all further proceedings in actions then pending, except to the

In Gerald's Offer, Gerald stated, in relevant part, as follows:

1. [Carmen] would have sole physical custody with the parties sharing legal custody. [Gerald] would pay [Carmen] child support according to the guidelines.

. . . .

6. Should [Carmen] wish to have the children attend Island School, the children's accounts would be used. All of the children's accounts would remain the children's with both parties signatures required for withdrawals. These would be considered to be educational accounts.

In all other respects, Gerald's Offer pertained to the division and distribution of most but not all of the property and debts of the parties. Gerald's Offer was silent on the issues of education of the children post-high school, his visitation of the children, spousal support, and the remainder of the property and debts.

In Carmen's Response, Carmen responded paragraph by paragraph, in relevant part, as follows:

1. [Carmen] will have sole legal and physical custody of the parties' minor children. . . . Child support to continue until each child is 23 years old or leaves school, etc.

. . . .

6. The parties had agreed that the children attend Island School and we do not believe the children should be negatively affected due to the divorce of their parents, therefore they should continue at Island School. The parents, putting the interest of their children above all, will equally pay the cost of tuition.

We agree that the savings accounts remain in the children['s] names and both

parent[s'] signature[s] be required for withdrawal of funds. Withdrawals are to be made for the benefit of the children specifically, education and if necessary for catastrophic medical expense.

We suggest that in additional [sic] to the child support to be paid while the children are in school, the parents pay equally higher education but the children would use their savings, student loans, scholarships, grants, etc. Once those sources of funds are exhausted, if they are still short funds, [Gerald] and [Carmen] pay one-half each of additional funds needed.

As amended by the family court's January 27, 2000 Order of Amendment, the family court's September 9, 1999 FsOF, CsOL and Decree state, in relevant part, as follows:

## I. FINDINGS OF FACT

. . . .

### CHILDREN'S ACCOUNTS.

. . . .

31. Early in the marriage, the parties agreed that when they had children they would set money aside for the children's educational needs, including attendance at private schools from grades K through 12 and attendance at college thereafter.

32. [Carmen] started saving for the children's educational fund in 1974, and by 1979 had opened a savings account for this purpose. . . . This first account was placed in [First Daughter's] name, and a second account was later opened and placed in [Second Daughter's] name upon her birth in 1988. Both of these savings accounts were funded with marriage income, although no further deposits were made after 1994.

33. On April 15, 1994, [Carmen] transferred each of the Children's savings ac-

extent that in the opinion of the court their application in a particular action pending when the amendments take effect would not be feasible or would work injustice, in which event the former procedure applies.

HFCR Rule 86 (1999) was deleted by order of the Hawai'i Supreme Court dated October 11, 1999, effective January 1, 2000. The HFCR (2000) does not have a HFCR Rule 86. HFCR

Rule 1 states, in relevant part, that "[t]hese rules govern the procedure in the family courts of the State in all suits of a civil nature[.]" HFCR Rule 81(i) (2000) states, in relevant part, that "[t]hese rules shall apply to all actions and proceedings of a civil nature in any family court and to all appeals to the supreme court and the intermediate court of appeals in all actions and proceedings of a civil nature in any family court[.]"

counts into two custodial accounts pursuant to the Hawaii Uniform Transfer To Minor's Act ("HUTMA") as set forth in [HRS] Chapter 553A. The HUTMA accounts were set up at the Bank of Hawaii, with [Carmen] being named as the custodian of each account. Initially, each account contained $36,000.00. As of March 31, 1999, [Second Daughter's] HUTMA Account ... had a value of $51,240.67 and [First Daughter's] HUTMA Account ... had a value of $51,624.17.

. . . .

35. In addition to the HUTMA accounts, [Carmen] also established two separate savings accounts at the Bank of Hawaii for the Children. One account is a joint savings account in the name of [Carmen] and [Second Daughter] which had a balance as of December 31, 1998, of $37,409.00. The second is a joint savings account in the name of [Carmen] and [First Daughter] which had a balance as of December 31, 1998, of $34,178.16. Both of these joint savings accounts ... were established with marriage funds.

. . . .

38. In 1997, [Gerald] established a joint savings account for each child at the Bank of Hawaii with marriage funds.... The first was a joint savings account between [Gerald] and [First Daughter] which had an initial balance of $6,000.00. The second was a joint savings account in the name of [Gerald] and [Second Daughter] which had an initial balance of $6,000.00.

. . . .

III. *DECREE GRANTING DIVORCE AND AWARDING CHILD CUSTODY*

. . . .

3. [Carmen] is awarded legal and physical custody of the Children subject to [Gerald's] rights of reasonable visitation.

4. [Gerald] shall pay child support to [Carmen] in the amount of $120.00 per child per month, for a total of $240.00 per month, ... Payments shall continue for each child until said child attains the age of 18 years and so long thereafter as said child continues her high school education or post high school education on a full-time basis at an accredited college or university, or in a vocational or trade school, and is under the age of 23 years, whichever occurs first.[4] ...

5. [Gerald] shall continue to carry medical, dental and optical insurance coverage for the Children as long as it is offered to him by the County of Kauai at no cost.... The parties shall equally divide all costs of the medical, dental, optical, or other medical or health care expenses for each child not covered by insurance as long as there is a child support obligation for said child.

6. As a condition of child support, [Gerald] shall maintain term life insurance on his life for each child in the amount of $75,000.00 per child naming the child as beneficiary for so long as a child support obligation is owed to the particular child.

7. The Children are awarded their individual savings accounts at the Bank of Hawaii and their individual life insurance policies. The parties shall both continue to be the beneficiaries of the Children's life insurance policies.

8. The Children each are awarded their individual HUTMA accounts at the Bank of Hawaii. [Carmen] shall continue to be the custodian of these accounts. [Carmen] shall have the right, in her discretion, to use the HUTMA funds for the Children's current educational needs through high school, and thereafter for college or other higher education.

9. [Gerald] shall be required to contribute to the Children's private school expenses through high school in an amount equal to one-third of the tuition for each child....

10. The Children/[Carmen] Joint Savings Account, the Children/[Gerald] Joint Savings Account and the Joint BOH Account shall be equally divided between the parties as provided herein.

(Footnote added.)

In the Motion for Award of Attorney's Fees, Gerald's counsel asserted, in relevant part, as follows:

4. It is obvious that the phrase "whichever occurs first" should be omitted.

26. [Carmen's] conduct in these proceedings has been in extreme bad faith and has caused substantial unnecessary expense.

27. The Findings of Fact; Conclusions of Law filed by the Court clearly are not more favorable as a whole to [Carmen] than as contained in [Gerald's] Rule 68 proposal of November 24, 1998. In fact, the Court's ruling is more favorable to [Gerald] than his Rule 68 proposal.

28. He believes that virtually all of [Gerald's] attorney's fees and costs [Gerald] incurred in these proceedings were needlessly incurred due to [Carmen's] conduct.

29. [Gerald] requests judgment in the total amount of [Gerald's] attorney's fees and costs over and above that which [Gerald] would have incurred for an uncontested divorce. Affiant estimates this cost at $750.00.

In an affidavit attached to the Motion for Award of Attorney's Fees, Gerald's counsel submitted a time sheet showing that, commencing on July 17, 1998, through September 13, 1999, he worked 136.30 hours at $125 per hour for a total of $17,037.50. Subtracting $750 for the "[l]egitimate cost of proceedings" and adding $1,501.11 costs, including $672.50 for photocopies, the total amount requested was $17,788.61.

The family court's January 27, 2000 FsOF, CsOL, and Order for Attorney Fees state, in relevant part, as follows:

## I. *FINDINGS.*

. . . .

21. On September 9, 1999, the Family Court entered its Findings of Fact; Conclusions of Law; Decree Granting Divorce And Awarding Child Custody, which was modified by the Family Court's Order On Plaintiff's Motion To Amend And Defendant's Motion For Reconsideration (collectively referred to as the "Divorce Decree").

. . . .

23. [Carmen] requested that she be awarded attorney's fees in her Complaint For Divorce, but did not file a motion for an award of attorney's fees pursuant to the HFCR.

24. The issues raised in the following identified paragraphs in [Gerald's] Offer were resolved as follows:

a. *Paragraph 1.* As set forth in [Carmen's] Response and agreed to by the parties, the custodial issue was settled. The issue as to child support was contested only with respect to the amount of [Gerald's] Income. However, the amount of [Gerald's] Income was not specifically raised in [Gerald's] Offer.

b. *Paragraph 2.* In [Carmen's] Response, she conditionally agreed to the three-unit condominium of the Olohena Property, but not as suggested by [Gerald]. However, this issue was resolved in the Stipulation.

c. *Paragraph 3.* In [Carmen's] Response, [Carmen] accepted the issues related to the acquisition and/or sale of the condominium units, although she questioned how the offsets for value would be determined or equalized. However, all these issues were resolved by the Stipulation.

d. *Paragraph 4.* In [Carmen's] Response, [Carmen] agreed to the issue concerning [Gerald's] acquisition of the Crossley Road Property. This was also resolved in the Stipulation.

e. *Paragraph 5.* In [Carmen's] Response, [Carmen] did not accept the offer to purchase J & C, Inc. as set forth in [Gerald's] Offer. However, this issue was resolved by the Stipulation.

f. *Paragraph 6.* [Gerald] offered to allow the Children's HUTMA Accounts (as defined in the Divorce Decree) and the Children/[Carmen] Joint Savings Accounts and Children/[Gerald] Joint Savings Accounts (as defined in the Divorce Decree, both of which will be collectively referred to as the "Children's Savings Accounts") to be kept intact and used for the Children's education. [Carmen], in [Carmen's Response], rejected this proposal and instead wanted the parties to be equally responsible for elementary and high school costs, as well as college costs not covered by the HUTMA Ac-

counts and Children's Savings Accounts. At trial, the Family Court determined: that the HUTMA Accounts were the Children's property; that the Children's Savings Accounts funds were marital property to be distributed between the parties; that [Gerald] was to pay ⅔ of the educational costs for the Children through high school; and that [Carmen] had the right to use the HUTMA funds for the Children's educational needs through high school and thereafter for college and other higher education.

g. *Paragraph 7.* In [Carmen's] Response, [Carmen] agreed to equally divide all life insurance, cash, savings and retirement accounts as marital property, but rejected the proposal as to [Gerald's] life insurance policy. [Carmen] insisted that [Gerald] maintain a life insurance of [sic] coverage of $250,000.00 as long as he had a child support obligation to the Children. In the Divorce Decree, the property was divided as set forth in [Gerald's] Offer, except that [Gerald] was required to maintain life insurance in the amount of $75,000.00 per child for as long as he had a child support obligation.

h. *Paragraph 8.* In [Carmen's] Response, [Carmen] rejected the proposal that the parties use their savings to pay the mortgages and expenses on the properties. This matter was eventually settled in the Stipulation.

i. *Paragraph 9.* In [Carmen's] Response, [Carmen] agreed that [Gerald] could purchase the Montana Property for $2,500.00. This matter was also addressed in the Stipulation.

j. *Paragraph 10.* Both parties seemingly agreed that they would retain their household effects and personal property at their individual residences. The Divorce Decree eventually awarded certain other personal property which was not itemized in either [Gerald's] Offer or [Carmen's] Response to the parties.

k. *Paragraph 11.* In [Carmen's] Response, [Carmen] agreed to the division of debts as offered. These matters were resolved by the Stipulation.

l. *Paragraph 12.* In [Carmen's] Response, [Carmen] only conditionally agreed to file joint tax returns for 1998. However, these matters were resolved in the Stipulation.

. . . .

## II. *CONCLUSIONS OF LAW.*

. . . .

2. If the requirements under HFCR Rule 68 are met, then the Court shall make an award of reasonable attorney's fees and costs unless the Court specifically determines that such an award would be inequitable considering the provisions of Hawaii Revised Statutes ("HRS") Section 580–47.

. . . .

5. In determining whether it would be inequitable to award attorney's fees and costs pursuant to HFCR Rule 68, the Court must consider the standards of HRS Section 580–47(f) and consider "the respective merits of the parties; the relative abilities of the parties; the economic conditions of each party at the time of the hearing; the burdens imposed upon either party for the benefit of the Children of the parties; and all other circumstances of the case".

6. The reference in HFCR Rule 68 to the equitability [sic] provisions in HRS Section 580–47 gives the Family Court the discretion, in the light of the consideration stated in HRS Section 580–47, to award such attorney's fees and costs as shall appear just and equitable.

7. The Court concludes that where one party makes a HFCR Rule 68 offer which is rejected by the other party, but where they subsequently enter into a settlement agreement resolving some of the issues contained in the Rule 68 offer, and where no provision is made in the settlement agreement for an award of attorney's fees, then those Rule 68 issues which are resolved shall not be subject to a further award of attorney's fees under HFCR Rule 68.

8. As a result, the Court concludes that the matters raised in [Gerald's] Offer

which were rejected by [Carmen] in [Carmen's] Response, but were later settled pursuant to the Stipulation, are not subject to a further award of attorney's fees or costs.

. . . .

10. Paragraph 6 of [Gerald's] Offer would have resolved the contested issue concerning the characterization . . . and the use of the Children's Savings Accounts and HUTMA Accounts and the payment of educational expenses. In [Carmen's] Response, [Carmen] rejected this element of [Gerald's] Offer. The Court concludes that the Divorce Decree was favorable to [Gerald] on these issues and thus the Divorce Decree was not more favorable to [Carmen] than the Offer.

11. The Court concludes that as set forth in the Divorce Decree, the parties after the divorce will be left with equal abilities to work and support themselves, that they will both be placed on an equal footing economically after the distribution of the marital property, and that the burden placed on [Carmen] as the custodial parent has been offset by the provisions of the Divorce Decree, including [Gerald's] duty of child support.

12. On the basis of HFCR Rule 68, and taking into consideration the factors set forth in HRS Section 580–47, and giving consideration to all of the circumstances of this case, the Court concludes that it would be just and equitable to order [Carmen] to pay a portion of [Gerald's] costs and attorney's fees in the amount of FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00).

. . . .

## III. *ORDER.*

On the basis of the Court's findings of fact and conclusions of law, the arguments of counsel, and the memoranda and affidavits presented, the records and files herein, and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. [Carmen's] request for attorney's fees and costs is denied.

2. [Gerald's] request for attorney's fees and costs is granted in part and [Carmen] is ordered to pay for a portion of [Gerald's] attorney's fees the sum of FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00).

3. [Carmen] shall pay [Gerald's] attorney's fees and costs as set forth herein within 20 days of the filing of this Order.

In an affidavit attached to the February 4, 2000 Motion for Reconsideration, Gerald's counsel states that, from July 17, 1998, through January 31, 2000, he worked 154.40 hours at $125 per hour for a total of $19,300. Subtracting $750 for the "[l]egitimate cost of proceedings" and adding $1,889.36 costs, including $947 for photocopies, the total amount requested was $20,439.35.

## DISCUSSION

In this appeal, Gerald challenges only CsOL nos. 6, 7, 8, and 12 of the January 27, 2000 FsOF, CsOL and Order for Attorney Fees. Gerald contends that the family court was required to award Gerald all of the $19,488.36 attorney fees and costs he reasonably incurred for the period following Gerald's Offer on November 24, 1998, not merely $5,000. In Gerald's view,

[s]hould this Court allow the Family Court's interpretation of Rule 68 to stand, then Rule 68 stands for nothing more than the proposition that the Family Court can award attorney's fees and costs when it "shall appear just and equitable". As HRS Section 580–47(f) already authorizes the Family Court to award such attorney's fees and costs "as shall appear just and equitable" should the Family Court's ruling be upheld, Rule 68 shall be made redundant and irrelevant. In fact, the existence of Rule 68 could do more harm than good to a prevailing party where, as here, added expense is incurred in litigating the significance of a successful Rule 68 offer in relation to the HRS Section 580–47(a) factors.

Gerald also contends that CsOL nos. 7 and 8 of the January 27, 2000 FsOF, CsOL and Order for Attorney Fees are wrong. We

note, however, that the January 27, 2000 FsOF, CsOL and Order for Attorney Fees is not clear as to what influence, if any, either or both CsOL nos. 7 and 8 had on COL no. 12 and the family court's decision to award only $5,000 costs and attorney fees.

Although she did not cross-appeal and, therefore, is not authorized to assert such challenges, Carmen challenges the January 27, 2000 FsOF nos. 24f, 24h, and 24k, and CsOL nos. 7, 10, and 12. Carmen contends that (1) Gerald's Offer did not define the separate children's accounts as stated in the family court's findings, (2) Gerald's Offer placed the children's continuing private high school education at issue, (3) Gerald's Offer was a sly attempt to avoid his legal responsibility to pay a portion of the private high school tuition costs, (4) the January 27, 2000 FOF no. 24f states that Carmen's Response rejected Gerald's Offer whereas it should have stated that Carmen's Response agreed with Gerald's Offer, and (5) contrary to Gerald's Offer and Carmen's Response, the family court decided in the January 27, 2000 FOF no. 24f "that the Children's Savings Accounts funds were marital property to be distributed between the parties[.]"

### A.

■ Hawai'i divorce cases involve a maximum of four discrete parts: (1) dissolution of marriage; (2)(a) child custody (legal and physical) and visitation, and (b) child support and education; (3) spousal support; and (4) division and distribution of property and debts. *Eaton v. Eaton,* 7 Haw.App. 111, 748 P.2d 801 (1987). Carmen notes that Gerald's Offer pertained to parts (2) and (4) but addressed less than all of the visitation and child support issues and less than all of the property and debts of the parties and, therefore, did not satisfy the requirements of HFCR Rule 68. With respect to part (4), she states that

[t]he real issue before the Court is whether or not HFCR Rule 68 contemplated an award of attorney fees regarding an offer with respect to property and debt division when said offer is for the division and

distribution of less than all property and debts and when the offer was not sufficiently specific to allow judgment to be entered. The HFCR Rule 68 in effect at the time of this action did not contemplate and provide for an offer of settlement with respect to an award of less than all the property and debts.

In *Criss v. Kunisada,* 89 Hawai'i 17, 18, 968 P.2d 184, 185 (App.1998), this court permitted a HFCR Rule 68 offer "that Wife shall be awarded custody of the minor child of the parties; subject to rights of reasonable visitation of [Husband]." In disagreeing with the family court's conclusion that HFCR Rule 68 may not pertain to less than all the issues in the case, the opinion stated, in relevant part, that

HFCR Rule 68 is not so limiting. Under its express terms an offer may be made concerning an item as to which "a decree or order" may "be entered." Plainly, a decree or order may be entered as to custody. Therefore, we conclude that any party may properly serve upon the adverse party a HFCR Rule 68 offer with regard solely to custody.

*Id.* at 25, 968 P.2d at 192 (footnote omitted). The opinion further stated that

where the offer is directed to the custody of the parties' minor child and not to the substance of any visitation and not to the substance of any visitation rights, an award of reasonable visitation rights to the non-custodial party is merely the concomitant outcome of the award of custody to the offeror.

*Id.* at 18, 968 P.2d at 185.

■ HFCR Rule 68 was subsequently amended effective January 1, 2000. The statement in HFCR Rule 68 (2000) that "[s]uch offer may be made as to all or some of the issues, such as custody and visitation" is consistent with this court's opinion in *Criss v. Kunisada.* Clearly, an HFCR Rule 68 offer may be made to completely settle one or more of the following issues: (1) dissolution of marriage; (2)(a) child custody (legal and physical) and visitation;[5] (2)(b) child

---

**5.** We suggest consideration of an amendment of        HFCR Rule 68 to exclude from its scope the

support and education; (3) spousal support; and/or (4) division and distribution of all of the joint and separate property and debts of the parties.

Gerald's Offer made offers regarding issues (2)(a), (2)(b), and (4). With respect to issue (4), however, Gerald's Offer was insufficient for purposes of HFCR Rule 68 because it pertained to the division and distribution of some but not all of the joint or separate real and personal property and debts.

In his November 16, 2001 Motion for Reconsideration, Gerald itemizes a 1989 Ford 350, a 1996 pipe horse trailer, fishing rods/reels, a horse, animal trophies, guns, a 1998 trash trailer, and a 1995 Jeep Cherokee. Gerald notes that he offered that Carmen "can have all of the personal property and household effects at the marital residence" and that the 1996 pipe horse trailer, the fishing rods/reels, the horse, the animal trophies, the 1998 trash trailer and the 1995 Jeep Cherokee were located at the marital residence. His silence as to the 1989 Ford 350 and the guns indicates that they were not at the marital residence and were not covered by his offer.

### B.

As noted above, in its January 27, 2000 FsOF, CsOL and Order for Attorney Fees, the family court decided in CsOL nos. 7 and 8 as follows:

7. The Court concludes that where one party makes a HFCR Rule 68 offer which is rejected by the other party, but where they subsequently enter into a settlement agreement resolving some of the issues contained in the Rule 68 offer, and where

issues of the legal and physical custody and visitation of one or more children. The purpose of HFCR Rule 68 is to encourage early settlements of litigation and to protect the party who is willing to settle from the burden of costs that subsequently accrue. *Staffend v. Lake Central Airlines, Inc.*, 19 Ohio Misc. 25, 47 F.R.D. 218, 219 (1969). In other words, the possible impact on a party's pocketbook is used to motivate that party to settle. In contrast, HRS § 571–46(1) (2000) specifies that "[c]ustody should be awarded to either parent or to both parents according to the best interests of the child." In other words, the possible impact on a party's pocketbook should have no influence on the child cus-

no provision is made in the settlement agreement for an award of attorney's fees, then those Rule 68 issues which are resolved shall not be subject to a further award of attorney's fees under HFCR Rule 68.

8. As a result, the Court concludes that the matters raised in [Gerald's] Offer which were rejected by [Carmen] in [Carmen's] Response, but were later settled pursuant to the Stipulation, are not subject to a further award of attorney's fees or costs.

■ We disagree with the January 27, 2000 CsOL nos. 7 and 8. The family court erroneously imposes the burden of settling the question of attorney fees and costs on the HFCR Rule 68 offeror who settled whereas that burden should be imposed on the HFCR Rule 68 offeree who settled after previously rejecting the HFCR Rule 68 offer. With respect to HFCR Rule 68, the fact that the decree or order resulted from a post-offer stipulation rather than a contested trial is not relevant or material.

In this case, the question is whether the entirety of those parts of the judgment resolving issues 2(a) and 2(b) "is patently not more favorable [to Carmen] than the offer" pertaining to issues 2(a) and 2(b). The family court did not decide this question. On remand, it must do so.

### C.

■ HFCR Rule 68 was drafted so as not to contradict the relevant provisions of HRS § 580–47(a). If the entirety of those parts of the judgment resolving issues 2(a) and 2(b) "is patently not more favorable [to Carmen]

tody issue. In our view, the possibility that a party is contesting the award of child custody and/or visitation for reasons other than the best interests of the child is insufficient to justify imposition of an HFCR Rule 68 type bright line rule that would deter a party whose genuine concern for the best interests of the child is motivating him or her to contest the award of child custody and/or visitation from continuing to contest the award of child custody and/or visitation. The family court's general discretion, pursuant to HRS § 580–47 (2000), to order the payment of attorney fees and costs appears adequate and more equitable.

than Gerald's Offer," pertaining to issues 2(a) and 2(b), Carmen "must pay the costs, including reasonable attorney's fees incurred after the making of the offer, unless the court shall specifically determine that such would be inequitable in accordance with the provisions of HRS section 580–47 or other applicable statutes, as amended." The relevant costs and attorney fees are solely those pertaining to issues 2(a) and 2(b). After the family court decides that the movant's request qualifies for an award and decides the amount of the related and reasonable costs and attorney fees, the family court then must decide whether an award of all or part of the related and reasonable costs and attorney fees would be inequitable pursuant to HRS § 580–47 or other applicable statutes.

The family court decided in COL No. 12 that "it would be just and equitable to order [Carmen] to pay a portion of [Gerald's] costs and attorney's fees in the amount of FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00)." In other words, the family court only implicitly decided that it would be unjust and inequitable to order Carmen to pay an additional $14,488.36 attorney fees and costs. This implicit decision is insufficient. HFCR Rule 68 expressly requires that the court shall order the party who did not accept the offer to "pay the costs, including reasonable attorney's fees incurred after the making of the offer, unless the court shall specifically determine that such would be inequitable in accordance with the provisions of HRS section 580–47 or other applicable statutes, as amended." A decision that it is just and equitable to order the party to pay $5,000 is not a specific determination that it would be inequitable in accordance with the provisions of HRS § 580–47 to order the party to pay more than $5,000. Moreover, when the family court, pursuant to HFCR Rule 68, specifically determines that it would be inequitable in accordance with the provisions of HRS § 580–47 to order a party to pay an amount of attorney fees and/or costs, the family court must state its reason(s) for its decision.

## CONCLUSION

Accordingly, we vacate (1) the January 27, 2000 Order Denying Plaintiff's Request for Attorney's Fees and Granting Defendant's Request for Attorney's Fees in Part and (2) the May 15, 2000 Order Denying Defendant's Motion for Reconsideration of the Order Denying Plaintiff's Request for Attorney's Fees and Granting Defendant's Request for Attorney's Fees in Part and remand for further proceedings consistent with this opinion.